ALBANY,
August, 1805.

Pierson
v.
Post.

The judge considering that when the property of a third person was taken wrongfully in execution, the malice was an inference of law, arising on the facts, and that the defendant was responsible for the conduct of his deputy, had certified the trespass to be wilful and malicious.

*Shephard* now moved to have the certificate vacated.

that the trespass was wilful and malicious, it must appear either that the execution was served by him, or with his knowledge, for a constructive trespass does not make it voluntary.

## Jesse Pierson against Lodowick Post.

THIS was an action of trespass on the case commenced in a justice's court, by the present defendant against the now plaintiff. The declaration stated, that *Post*, being in possession of certain dogs and hounds under his command, did, " upon a certain wild and uninhabited, unpossessed and " waste land, called the beach, find and start one of those " noxious beasts called a fox," and whilst there hunting, chasing and pursuing the same with his dogs and hounds, and when in view thereof, *Pierson*, well knowing the fox was so hunted and pursued, did in the sight of *Post*, to prevent his catching the same, kill and carry it off. A verdict having been rendered for the plaintiff below, the defendant there sued out a *certiorari*, and now assigned for error, that the declaration and the matters therein contained were not sufficient in law to maintain an action.

Pursuit alone gives no right of property in animals *feræ naturæ*, therefore an action will not lie against a man for killing and taking one pursued by, and in the view of the person who originally found, started, chased, and was on the point of seizing it. Occupancy in wild animals can be acquired only by possession, but such possession does not signify manucaption, tho' it must be of such a kind as by nets, snares or other means, as to so circumvent the creature that he cannot escape.

*Sanford* for the now plaintiff. It is firmly settled, that animals *feræ naturæ* belong not to any one. If then, *Post* had not acquired any property in the fox, when it was killed by *Pierson*, he had no right in it which could be the subject of injury. As, however, a property may be gained in such an animal, it will be necessary to advert to the facts set forth, to see whether they are such as could give a legal interest in the creature, that was the cause of the suit below. Finding, hunting, and pursuit, are all that the plaint enumerates. To

ALBANY,
August, 1805.

Pierson
v.
Post.

create a title to an animal *feræ naturæ*, occupancy is indis-
pensible. It is the only mode recognised by our system.
2 *Black. Com.* 403. The reason of the thing shews it to be
so. For whatever is not appropriated by positive institu-
tions, can be exclusively possessed by natural law alone. Oc-
cupancy is the sole method this code acknowledges. Au-
thorities are not wanting to this effect. *Just. Lib.* 2. *tit.* 1 § 12
" *Feræ igitur bestiæ, simul atque ab aliquo captæ fuerint jure*
" *gentium statim illius esse incipiunt.*" There must be a
taking ; and even that is not in all cases sufficient, for in the
same section he observes, " *Quicquid autem eorum ceperis,*
" *eo usque tuum esse intelligitur, donec tua custodia coercetur ;*
" *cum vero tuam evaserit custodiam, et in libertatem natura-*
" *lem sese receperit, tuam esse desinit, et rursus occumpantis*
" *fit.*" It is added also, that this natural liberty may be re-
gained even if in sight of the pursuer, " *ita sit, ut difficilis*
" *sit ejus persecutio.*" In § 13 it is laid down, that even
wounding will not give a right of property in an animal
that is unreclaimed. For, notwithstanding the wound *mul-*
" *ta accidere soleant ut eam non capias ;*" and " *non aliter*
" *tuam esse, quam si eam ceperis.*" *Fleta B.* 3. *c.* 2. *p.* 175,
and *Bracton B.* 2. *c.* 1. *p.* 86, are in unison with the Ro-
man law-giver. It is manifest then, from the record,
that there was no title in *Post*, and the action therefore not
maintainable.

· *Colden* contra. I admit with *Fleta*, that pursuit alone does
not give a right of property in animals *feræ naturæ*, and I
admit also that occupancy is to give a title to them. But
then, what kind of occupancy ? and here I shall contend, it
is not such as is derived from manucaption alone. In *Puf-
fendorf's* Law of nature and of nations, *B.* 4. *c.* 4. *S.* 5. *n.*
6. by *Barbeyrac* notice is taken of this principle of taking
possession. It is there combatted, nay, disproved ; and in
*B.* 4. *c.* 6. *S.* 2. *n.* 2. *Ibid. S.* 7. *n.* 2, demonstrated that ma-
nucaption is only one of many means, to declare the inten-
tion of exclusively appropriating that; which was before in
a state of nature. Any continued act which does this, is
equivalent to occupancy. Pursuit therefore, by a person
who starts a wild animal, gives an exclusive right whilst it is
followed. It is all the possession the nature of the subject

admits; it declares the intention of acquiring dominion, and is as much to be respected as manucaption itself. The contrary idea requiring actual taking, proceeds, as *Mr. Barbeyrac* observes, in *Puffendorf*, B. 4. c. 6. S. 10, on a " false " notion of possession."

*Sanford* in reply. The only authority relied on is that of an annotator. On the question now before the court, we have taken our principles from the civil code, and nothing has been urged to impeach those quoted from the authors referred to.

*Per curiam*, delivered by TOMPKINS, J. This cause comes before us on a return to a *certiorari* directed to one of the justices of *Queen's* county.

The question submitted by the counsel in this cause for our determination is, whether *Lodowick Post*, by the pursuit with his hounds in the manner alleged in his declaration, acquired such a right to, or property in the fox, as will sustain an action against *Pierson* for killing and taking him away?

The cause was argued with much ability by the counsel on both sides, and presents for our decision a novel and nice question. It is admitted, that a fox is an animal *feræ naturæ*, and that property in such animals is acquired by occupancy only. These admissions narrow the discussion to the simple question of what acts amount to occupancy, applied to acquiring right to wild animals.

If we have recourse to the ancient writers upon general principles of law, the judgment below is obviously erroneous. *Justinian's Institutes*, lib. 2. tit. 1. sect. 13, and *Fleta*, lib. iii. c. ii. page 175, adopt the principle, that pursuit alone, vests no property or right in the huntsman; and that even pursuit, accompanied with wounding, is equally ineffectual for that purpose, unless the animal be actually taken. The same principle is recognised by *Bracton*, lib. ii. c. i. page 8.

*Puffendorf*, lib. iv. c. 6. sec. 2. & 10. defines occupancy of beasts *feræ naturæ*, to be the actual corporal possession of them, and *Bynkershoek* is cited as coinciding in this definition. It is indeed with hesitation that *Puffendorf* affirms, that a wild beast mortally wounded, or greatly maimed, cannot be fairly intercepted by another, whilst the pursuit

of the person inflicting the wound continues. The forego-ing authorities are decisive to shew, that mere pursuit, gave *Post* no legal right to the fox, but that he became the property of *Pierson*, who intercepted and killed him.

It therefore only remains to inquire, whether there are any contrary principles, or authorities, to be found in other books, which ought to induce a different decision. Most of the cases which have occurred in *England*, relating to property in wild animals, have either been discussed and decided upon the principles of their positive statute regulations, or have arisen between the huntsman, and the owner of the land upon which beasts *feræ naturæ* have been apprehended ; the former claiming them by title of occupancy, and the latter *ratione soli*. Little satisfactory aid can, therefore, be derived from the *English* reporters.

*Barbeyrac* in his notes on *Puffendorf*, does not accede to the definition of occupancy by the latter, but, on the contrary, affirms, that actual bodily seizure is not, in all cases, necessary to constitute possession of wild animals. He does not however, *describe* the acts which, according to his ideas, will amount to an appropriation of such animals to private use, so as to exclude the claims of all other persons, by title of occupancy, to the same animals ; and he is far from averring that pursuit alone is sufficient for that purpose. To a certain extent, and as far as *Barbeyrac* appears to me to go, his objections to *Puffendorf's* definition of occupancy are reasonable and correct. That is to say, that actual bodily seizure is not indispensible to acquire right to, or possession of wild beasts ; but that, on the contrary, the mortal wounding of such beasts, by one not abandoning his pursuit, may, with the utmost propriety, be deemed possession of him ; since thereby, the pursuer manifests an unequivocal intention of appropriating the animal to his individual use, has deprived him of his natural liberty, and brought him within his certain control. So, also, encompassing and securing such animals with nets and toils, or otherwise intercepting them, so as to deprive them of their natural liberty, and render escape impossible, may justly be deemed to give possession of them to those persons who, by their industry and labor, have used such means of apprehending them. *Barbeyrac* seems to have adopted, and had in view in his notes,

the more accurate opinion of *Grotius*, with respect to occupancy. That celebrated author, *lib.* ii. c. 8. *sect.* 3. *page* 309, speaking of occupancy, proceeds thus, " *Requiritur autem* " *corporalis quædam possessio ad dominium adipiscendum ;* " *atque ideo, vulnerasse non sufficit.*" But in the following section he explains and qualifies this definition of occupancy : " *Sed possessio illa potest non solis manibus, sed instru-* " *mentis, ut decipulis, retibus, laqueis dum quo adsint : pri-* " *mum ut ipsa instrumenta sint in nostra potestate, deinde* " *ut fera, ita inclusa sit, ut exire inde nequeat.*" This qualification embraces the full extent of *Barbeyrac's* objection to *Puffendorf's* definition, and allows as great a latitude to acquiring property by occupancy, as can reasonably be inferred from the words or ideas expressed by *Barbeyrac* in his notes. The case now under consideration is one of mere pursuit, and presents no circumstances or acts which can bring it within the definition of occupancy by *Puffendorf*, or *Grotius*, or the ideas of *Barbeyrac* upon that subject.

The case cited from 11 *Mod.* 74—130, I think clearly distinguishable from the present ; inasmuch, as there the action was for maliciously hindering and disturbing the plaintiff in the exercise and enjoyment of a private franchise ; and in the report of the same case 3 *Salk.* 9. *Holt*, Chief Justice, states, that the ducks were *in* the plaintiff's decoy pond and *so in his possession*, from which it is obvious the court laid much stress in their opinion, upon the plaintiff's possession of the ducks, *ratione soli.*

I am the more readily inclined to confine possession or occupancy of beasts *feræ naturæ*, within the limits prescribed by the learned authors above cited, for the sake of certainty, and preserving peace and order in society. If the first seeing, starting or pursuing such animals, without having so wounded, circumvented or ensnared them, so as to deprive them of their natural liberty, and subject them to the control of their pursuer, should afford the basis of actions against others for intercepting and killing them, it would prove a fertile source of quarrels and litigation.

However uncourteous or unkind the conduct of *Pierson* towards *Post*, in this instance, may have been, yet his act was productive of no injury or damage, for which a legal

ALBANY,
August, 1805.

Pierson
v.
Post.

remedy can be applied. I am of opinion the judgment be-low was erroneous, and ought to be reversed.

LIVINGSTON J.  My opinion differs from that of the court. Of six exceptions, taken to the proceedings below, all are abandoned except the third, which reduces the controversy to a single question.

Whether a person, who with his own hounds, starts and hunts a fox, on waste and uninhabited ground, and is on the point of seizing his prey, acquires such an interest in the animal, as to have a right of action against another, who in view of the huntsman and his dogs in full pursuit, and with knowledge of the chase, shall kill and carry him away ?

This is a knotty point, and should have been submitted to the arbitration of sportsmen, without poring over *Justinian, Fleta, Bracton, Puffendorf, Locke, Barbeyrac* or *Blackstone*, all of whom have been cited ; they would have had no difficulty in coming to a prompt and correct conclusion. In a court, thus constituted, the skin and carcase of poor *Renard* would have been properly disposed of, and a precedent set, interfering with no usage or custom which the experience of ages has sanctioned, and which must be so well known to every votary of *Diana.* But the parties have referred the question to our judgment, and we must dispose of it as well as we can, from the partial lights we possess, leaving to a higher tribunal, the correction of any mistake which we may be so unfortunate as to make. By the pleadings it is admitted, that a fox is a " wild and noxious beast." Both parties have regarded him, as the law of nations does a pirate " *hostem humani generis,*" and although " *de mortuis nil nisi bonum,*" be a maxim of our profession, the memory of the deceased has not been spared. His depredations on farmers and on barn-yards, have not been forgotten ; and to put him to death, wherever found, is allowed to be meritorious, and of public benefit. Hence it follows, that our decision should have in view the greatest possible encouragement to the destruction of an animal, so cunning and ruthless in his career. But who would keep a pack of hounds ; or what gentleman, at the sound of the horn, and at peep of day would mount his steed, and for

hours together, " *sub jove frigido*" or a vertical sun, pursue the windings of this wily quadruped, if, just as night came on, and his stratagems and strength were nearly exhausted, a saucy intruder, who had not shared in the honors or labours of the chase, were permitted to come in at the death, and bear away in triumph the object of pursuit? Whatever *Justinian* may have thought of the matter, it must be recollected that his code was compiled many hundred years ago, and it would be very hard indeed, at the distance of so many centuries, not to have a right to establish a rule for ourselves. In his day, we read of no order of men, who made it a business, in the language of the declaration in this cause, " with hounds and dogs to find, start, pursue, hunt, " and chase," these animals, and that too, without any other motive, than the preservation of *Roman* poultry ; if this diversion had been then in fashion, the lawyers who composed his institutes, would have taken care not to pass it by, without suitable encouragement. If any thing therefore, in the digests or pandects shall appear to militate against the defendant in error, who, on this occasion, was the fox hunter, we have only to say *tempora mutantur ;* and if men themselves change with the times, why should not laws also undergo an alteration?

It may be expected, however, by the learned counsel, that more particular notice be taken of their authorities. I have examined them all, and feel great difficulty in determining, whether to acquire dominion over a thing, before in common, it be sufficient that we barely see it, or know where it is, or wish for it, or make a declaration of our will respecting it ; or whether, in the case of wild beasts, setting a trap, or lying in wait, or starting, or pursuing, be enough ; or if an actual wounding, or killing, or bodily tact and occupation be necessary. Writers on general law, who have favored us with their speculations on these points, differ on them all; but, great as is the diversity of sentiment among them, some conclusion must be adopted on the question immediately before us. After mature deliberation, I embrace that of *Barbeyrac*, as the most rational, and least liable to objection. If at liberty, we might imitate the courtesy of a certain Emperor, who, to avoid giv-

A a

ALBANY,
August, 1805.

ing offence to the advocates of any of these different doc-trines, adopted a middle course, and by ingenious distinctions, rendered it difficult to say, (as often happens after a fierce and angry contest,) to whom the palm of victory belonged. He ordained, that if a beast be followed with *large dogs and hounds*, he shall belong to the hunter, not to the chance occupant ; and in like manner, if he be killed or wounded with a lance or sword ; but if chased with *beagles only*, then he passed to the captor, not to the first pursuer. If slain with a dart, a sling or a bow, he fell to the hunter, if still in chase, and not to him who might afterwards find and seize him.

Now, as we are without any municipal regulations of our own, and the pursuit here, for aught that appears on the case, being with dogs and hounds of *imperial stature*, we are at liberty to adopt one of the provisions just cited, which comports also with the learned conclusion of *Barbeyrac*, that property in animals *feræ naturæ*, may be acquired without bodily touch or manucaption, provided the pursuer be within reach, or have a *reasonable* prospect (which certainly existed here) of taking, what he has *thus* discovered an intention of converting to his own use.

When we reflect also that the interest of our husbandmen, the most useful of men in any community, will be advanced by the destruction of a beast so pernicious and incorrigible, we cannot greatly err, in saying, that a pursuit like the present, through waste and unoccupied lands, and which must inevitably and speedily have terminated in corporal possession, or bodily *seisin*, confers such a right to the object of it, as to make any one a wrong doer, who shall interfere and shoulder the spoil. The *justice's* judgement ought therefore, in my opinion, to be affirmed.