DORMAN WALRADT, AS ASSIGNEE FOR THE BENEFIT OF CREDITORS OF FRANK M. PECK, RESPONDENT, *v.* PHŒNIX INSURANCE COMPANY OF HARTFORD, CONNECTICUT, APPELLANT.

*Insurance policy — " unconditional ownership " — levy by sheriff — its effect on title and possession — increase of hazard — a question of fact — who is an " occupant ". of personal property.*

A policy of insurance upon the stock in a store provided that it should be void if the interest of the insured was other than the unconditional and sole ownership, or if any change, other than by the death of the insured, should take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or voluntary act of the insured, or otherwise.

A judgment was recovered against the insured, execution was issued thereon, and on April 4, 1890, the sheriff levied, as alleged, upon the stock insured. The sheriff made no inventory at the time, nor any indorsement upon the execution, but he closed the store, took the key and made a note of the transaction in his memorandum-book.

A few hours later, and on April fifth, the store burned.

In an action brought against the insurance company, by the assignee of the insured, to recover the loss under the policy:

*Held,* that the clause in the policy, relative to unconditional and sole ownership, must be taken to refer to the ownership as it *stood* when the policy was issued, and not to any subsequent change or condition of the title.

That, assuming the levy by the sheriff to be good, it gave to the sheriff only a lien, and that this did not, within the meaning of the policy, change the interest or title of the insured in the property.

That, assuming that the sheriff, in aid of his levy, had taken possession of the goods, such change of possession did not avoid the policy, by its terms, unless it increased the hazard.

That the question whether it did so increase it was one of fact, and that it was proper to submit that question to the jury.

That, within the meaning of the policy, the sheriff became " an occupant," although the policy related only to personal property.

Various uses of the word " occupant," stated.

APPEAL by the defendant, the Phœnix Insurance Company of Hartford, Connecticut, from a judgment of the Supreme Court, entered in the office of the clerk of Jefferson county on the 20th day of December, 1890, upon a verdict for the plaintiff for $1,533.25 after a trial at the Jefferson Circuit before the court and a jury; also from an order, made on the 11th day of December, 1890, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes of the court.

The complaint alleged the issuing to the plaintiff's assignor of a policy for $1,500 for the term of one year from April 13, 1889; that, on April 5, 1890, a fire occurred by which the insured property was entirely destroyed; that after the fire the assured, Frank M. Peck, executed and delivered to the plaintiff a general assignment of all his real and personal property, and that payment of the amount of the policy had been duly demanded and refused.

The answer denied any knowledge or information sufficient to form a belief as to the destruction of the property by fire or the assignment to plaintiff; admitted the service of notice of proofs of loss, and alleged, by way of defense, that prior to the fire the sheriff of Jefferson county had levied upon and seized the stock of goods covered by the policy of insurance by virtue of a judgment and execution in his hands, and was in possession of the same at the time of the fire; and that a change in the interest, title or possession of the subject of insurance had taken place prior to the fire

without any consent therefor indorsed upon the policy, as required in such case, and that the policy was, therefore, void at the time of the fire.

On the 18th of February, 1890, John C. Hieber and others recovered a judgment against Frank M. Peck, the plaintiff's assignor, for the sum of $1,019.13. The judgment-roll was on that day filed and judgment docketed in Oneida county. On the 19th of February, 1890, a transcript thereof was filed and judgment was docketed in the office of the clerk of Jefferson county.

On the 2d of April, 1890, an execution upon this judgment was duly issued to the sheriff of Jefferson county, and was received by him on the third of the same month. On the next day the sheriff went to Theresa, where the plaintiff's assignor resided, arriving there at about ten o'clock in the forenoon, and went to the store of the plaintiff's assignor, to whom he exhibited the execution and informed him that he should make a levy under it upon the stock of goods in the store, but that he would not return to Watertown until night, and he could have the day in which to pay the execution if he could. The sheriff claims to have made a levy upon the entire stock of goods in the store, and at the same time made an entry in his memorandum-book, which was as follows: "April 4th, 1890. This day levied on stock of goods in store of F. M. Peck, Theresa, consisting of dry-goods, groceries, ready-made clothing, boots and shoes, hardware, etc., etc. John C. Hieber, David C. Wallace, J. F. Day and J. C. Roberts vs. F. M. Peck. T. J. Barrows, Attorney." No indorsement was made upon the execution, nor was there any inventory made or possession of the goods taken, except that the sheriff remained in and about the village until between four and five o'clock in the afternoon, when, the execution not having been paid, he informed the clerk in the store that he should have to close the store. The clerk closed up the store, fastening the doors and locking the outer door, gave the key to the sheriff, who put it in his pocket and went to the railroad station. There he found Mr. Peck, and asked him for the other key of the store. Peck informed him he was trying to arrange for the payment of the execution, and did not want to give up the key just then, but wanted the sheriff to stay over night, assuring him that he would be able to get the money and close up the matter. This the sheriff finally

consented to do and went to a hotel, informing Peck that they would find him there if they succeeded in getting the matter fixed up. About nine o'clock Mr. Yost, a banker residing at Theresa,. from whom Mr. Peck was trying to procure the money, went to the hotel, found the sheriff and delivered to him the other key, which had been in Peck's possession, which the sheriff put in his pocket. The fire occurred a little before one o'clock on the morning of April fifth.

At the close of the evidence a motion was made by the defendant that the court direct a verdict in its favor, or nonsuit the plaintiff upon the ground that prior to the fire there had been such change of interest, title and possession in the property by the levy of the sheriff as rendered the policy void from that time, and that there could be no recovery. The court, in effect, held that the words "unconditional and sole ownership" in the policy referred to a condition existing at the time when the policy was issued, and not to any subsequent or changed condition; also, that the condition in reference to change of interest, title or possession should be read in connection with the words "except change of occupants without increase of hazard," and it was for the jury to say whether the change of interest, title or possession, effected by the levy of the sheriff, increased the hazard. The defendant excepted to the refusal of the court to nonsuit the plaintiff.

The question whether the hazard was increased by reason of the sheriff's having levied upon the property of the plaintiff's assignor was submitted to the jury. The jury found a verdict for the plaintiff for $1,533.25.

*A. H. Sawyer*, for the appellant.

*Thompson & Chapman*, for the respondent.

MARTIN, J.:

The controversy between the parties arose over a policy of insurance issued by the defendant to the plaintiff's assignor. The latter was a merchant doing business at the village of Theresa, N. Y. The property insured consisted of goods of the kind usually kept for sale in country stores, and was contained in a three-story brick building owned and occupied by the insured. At the time of the

fire the value of the property insured exceeded eleven thousand dollars. The policy in suit was for $1,500, and $5,500 concurrent insurance was permitted.

That the policy in suit was duly issued, the premium therefor fully paid and the property mentioned therein properly insured, are undisputed; nor does there seem to be any doubt that the property insured was destroyed by fire before the expiration of the time for which the policy was issued, and the value of the goods destroyed greatly exceeded the total insurance thereon. So far as appears on this appeal, the only ground upon which the defendant at the trial sought to avoid its liability was, that the sheriff of Jefferson county, before the fire, had levied upon the goods insured, by virtue of an execution against the plaintiff's assignor. The claim of the appellant is, that when this levy was made the policy became void by reason of the conditions contained therein. The conditions relied upon were: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the interest of the insured be other than unconditional and sole ownership, * * * or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured or otherwise."

The trial court held that the condition in the policy that it should be void if the interest of the insured be other than the unconditional and sole ownership related to the title of the property when the policy was issued, and *not to any subsequent change or condition of the title*. The whole policy, when read and construed together, tends to justify that construction. (*Haight* v. *Continental Ins. Co.*, 92 N. Y., 51.) Yet, if it were to be held otherwise, it would be difficult to see how it could properly be claimed that the title of the assured to the goods in question was other than unconditional and sole ownership.

In examining this question, as well as in examining the question if any change had taken place in the interest, title or possession of the subject of insurance, except change of occupants without increase of hazard, we are disposed to hold that the sheriff made a valid levy as between the parties. While his manner of making a levy was loose and quite uncertain, still we think it was, perhaps, sufficient.

(*Dean* v. *Campbell*, 19 Hun, 534; *Roth* v. *Wells*, 29 N. Y., 471; *Bond* v. *Willett*, 1 Keyes, 377; *Barker* v. *Binninger*, 14 N. Y., 270; *Elias* v. *Farley*, 3 Keyes, 398.)

Assuming the levy to have been valid, the question is presented whether it changed the title so that it became other than unconditional and sole ownership, or produced any change in the interest, title or possession of the assured which rendered the policy void. Thus we are led to examine the effect of a valid levy upon the title of the property which is the subject of the levy.

In *Miller* v. *Adsit* (16 Wend., 349) the question as to the effect of a levy upon the title to property was somewhat discussed, and it was said : " The sheriff has, in fact, no property in the chattel levied upon, either general or special; he has no right to sell it at private sale, nor to exercise any of the powers over it, which one having a property in it may exercise; his control or power over the chattel is of a peculiar character, perfectly *sui generis*, which the law has given him as an executive officer in order that the judgment of the court shall be enforced or carried into effect, and that the ends of justice shall be attained by satisfying the plaintiff's demand out of the property of the defendant."

Again, in *People* v. *Hobson* (1 Den., 578), in delivering the opinion of the court in that case BRONSON, Ch. J., said : " The mere levy neither gives anything to the creditor, nor takes anything from the debtor. It does not divest a title; it only creates a lien on the property."

In *Tiffany* v. *St. John* (65 N. Y., 319) it is said : "After the action is over, and judgment obtained and execution levied, the case becomes clearly assimilated to that of an ordinary lien, and if tender is made and not accepted the lien will be extinguished."

In *Green* v. *Homestead Insurance Company* (82 N. Y., 517) the policy, which was on real and personal property, contained a condition that the company should not be liable for any loss if, without written consent, the interest of the insured in the property was changed in any manner, whether by the act of the insured or by operation of law; and it was held that the filing of a mechanic's lien did not effect any change of interest in the property insured. ·

Under the authorities in this State we think it must be held that, if valid, the levy upon the goods in question, at most, merely created

a lien thereon which gave the sheriff the right to retain the possession until sold, or until the levy was discharged by payment or otherwise, and that neither the sheriff nor the creditor thereby acquired any title or interest in the property within the true intent and meaning of the provisions of the policy under consideration.

The sheriff, however, became entitled to the possession of the goods levied upon. Whether he had taken actual possession under his levy when the fire occurred is not entirely free from doubt. The court held that if the possession was in the sheriff, still the change did not render the policy invalid, unless it increased the hazard, and that question was submitted to the jury, and it found for the plaintiff. The correctness of this disposition of the question involves the consideration of that condition in the policy which provides that it shall be void if any change of title, interest or possession take place, except change of occupants, without increase of hazard. The single question presented is, whether the words " change of occupants " relates exclusively to real estate, or to personal property as well. The appellant contends that they relate only to real estate. In determining this question it may be well to remember that the subject of insurance in this case was personal property only, and hence, if the construction contended for by the appellant is to obtain, the words " except change of occupants without increase of hazard " are superfluous and meaningless. In construing contracts, as in construing statutes, effect must, if possible, be given to all the language employed. Applying that rule in this case, it becomes obvious that the words of the exception related to the property in question.

Moreover, the contention that the words " change of occupants " can relate only to real estate, and that the term applied to personal property would be absurd, does not seem to be sustained when we consider the ordinary meaning of the word " occupant." The word " occupant," as defined by Webster, is : " One who occupies or takes possession ; one who has the actual use or possession, or is in possession of the thing." By Anderson : " One who has the actual use or possession of a thing." By Abbott : " One who has possession or controls things actual ; " he then adds : " In the vernacular these words are used with a shade of meaning of being within the thing spoken of ; one is said to occupy a house or a tract of land, but not

often to occupy ordinary chattels. In law such a distinction is less noticed; occupy may be used like 'possess' in respect to chattels; especially in the expression 'title by occupancy.'" By Bouvier: "One who has the actual use or possession of a thing." Thus we see that the meaning ascribed to the word "occupant" by lexicographers includes the possession of personal as well as real property. (See, also, *Pierson* v. *Post*, 3 Caines, 175.)

In construing this, as in construing any other contract, the language employed must be taken in its ordinary and popular sense, unless it appears to have been used in a technical sense, or custom or usage has impressed a different meaning upon it. Applying that rule to the questions before us, it becomes quite manifest that the exception in the policy, which permitted a change of occupants where there was no increase of hazard, applied as well to personal as real property, as it was in no way limited to the latter; and that the court, therefore, properly held that the change of possession did not render the policy void unless the hazard was thereby increased. The jury having found for the plaintiff upon that question, he was entitled to the judgment awarded.

As there is no question of waiver involved on this appeal, no examination of the question is necessary, although it was discussed by the appellant. The trial judge, in considering whether the appellant's motion for a nonsuit should be granted, referred to, and somewhat discussed the question of waiver, but that question was in no way submitted to the jury or referred to in the charge of the court. That the court properly denied the appellant's motion we have already in effect held. The ruling having been correct, any reasons for the decision that may have been stated by the court would not render it erroneous. As there are no other questions that need be considered, we think the judgment should be affirmed.

MERWIN, J., concurred.

Judgment and order affirmed, with costs.