THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MILTON W. DOXTATER, Appellant.

*Title to land under the water of a lake, and exclusive right of fishing therein —— ownership of fish therein — when the exclusive right of fishing is subordinate to the regulations of the Legislature — chapter 141 of the Laws of 1886.*

The ownership in fee of the land under the water of a lake, and of the exclusive right of fishing therein, does not necessarily carry with it the ownership of the fish in such lake. The property in the fish does not vest until they are brought so far into possession by the aid of nets or other means that they cannot escape.

Where the waters of a lake connect directly with the water of a river emptying into Lake Ontario, in which the public has an interest, the exclusive right of fishing in such lake which the owners thereof have is subordinate to the regulations to be prescribed by the Legislature for the general good.

The Legislature had power to pass chapter 141 of the Laws of 1886. Such act is constitutional, does not apply only to public waters, and the provisions thereof

apply to "Perch lake" which directly connects at all seasons of the year with a river of considerable size that empties into Lake Ontario. The subject covered by such act is a single one and its title is sufficiently specific.

APPEAL by the defendant, Milton W. Doxtater, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 29th day of May, 1893, upon the verdict of a jury for fifty dollars, rendered by direction of the court after a trial at the Jefferson County Circuit, and also from an order denying the defendant's motion for a new trial made upon the minutes.

*Lansing & Lansing*, for the appellant.

*Virgil K. Kellogg*, for the respondent.

MERWIN, J.:

By chapter 141 of the Laws of 1886, entitled "An act to prevent taking fish from the waters of Lake Ontario adjacent to the shore of Jefferson county, or from the inland waters of said county, by other means than angling," it is provided that "No person shall at any time kill or take from the waters of Henderson bay or Lake Ontario, within one mile from the shore, between the most westerly point of Pillar Point and the boundary line between the counties of Jefferson and Oswego, or within one mile from the shore of any island in Lake Ontario which is a part of Jefferson county, except Grenadier Island and Fox Island, or from the waters of any creek, lake or river, or inland waters in the county of Jefferson, any fish of any kind by any device or means whatever, otherwise than by hook and line or rod held in hand." A penalty of fifty dollars was imposed for the violation of any of the provisions of the act.

In the complaint it is alleged that on or about December 1, 1891, in violation of said act, the defendant, "by means of a net, did kill and take from Perch lake, which is one of the inland waters in the county of Jefferson, six pickerel, six rock bass and six bullheads." In the answer the killing and taking from Perch lake is not denied, but it is denied that Perch lake is one of the inland waters in the county of Jefferson within the meaning of the act, and it is alleged that Perch lake, and the land under it, and the waters and the fish in

it, are the absolute property of George H. Sherman and others, under whose authority the defendant acted in taking the fish, and that they had the right to take the fish by nets or otherwise as they desired.

Perch lake is situated in the county of Jefferson, and is about two and a half miles long and from half a mile to a mile wide. Its outlet is Perch river. This is twenty to thirty feet wide and from three to six feet deep and extends a distance of about eight miles to Black River bay which goes into or is part of Lake Ontario. The course of Perch river is very crooked and the descent is about a foot to the mile. Near the bay there are falls from fifteen to twenty-five feet high, mainly perpendicular. There is evidence tending to show that fish cannot go up these falls, but there is nothing to prevent fish going down from Perch lake through Perch river over the falls into Lake Ontario. There are numerous landed proprietors along the line of Perch river. The inlet of Perch lake is Hyde creek which is the outlet of Hyde lake some miles above. There is evidence tending to show that in the summer season, and especially in a dry time, Hyde creek, at its entrance into Perch lake, dries up or loses itself in the swamp, so that fish would not be able to pass up or down. At other seasons of the year the water is sufficient for the passage of fish, and it was shown that fish to some extent were accustomed to inhabit Hyde creek and Hyde lake.

It is conceded by the plaintiff that those under whom the defendant claims hold the title in fee of the land under the waters of Perch lake and that they have the exclusive right of fishing in the lake. It does not follow from this that they are the owners of the fish in the lake. Their property in them does not vest until they are within their power and the possession so far established by the aid of nets or other means that they cannot escape. (2 Kent's Com. 349; *Pierson* v. *Post*, 3 Caines, 175; *Buster* v. *Newkirk*, 20 Johns. 75.) The fish in Perch lake were not under the control of the owners of the land. They could at all seasons go at pleasure down Perch river and into Lake Ontario, and during most of the time could pass up Hyde creek. The case of *Fleet* v. *Hegeman* (14 Wend. 42), cited by the counsel for defendant, does not apply. There it was held that oysters, planted by an individual in a bed, clearly designated and marked out in a bay or arm of the sea, which

is a common fishery to all the inhabitants of the town in which the bay is situated, are the property of him who planted them, and trespass lies for any interference with them by another. They had been reclaimed by the plaintiff and distinctly designated according to usage, and were substantially in his possession and under his control.

Had the Legislature a right to regulate the manner in which the owners of the land should catch the fish? The argument on the part of the defendant is that the present owners have all the rights conveyed by the State in the original patent to Penet; that in that there was no reservation of any right to control the manner of fishing; that, therefore, no such right in the State now exists, and its attempted exercise by the statute in question is in violation of that part of the Constitution which provides that no person shall be deprived of his property without due process of law.

To sustain this view the case of *The People* v. *Platt* (17 Johns. 195) is cited. In that case it was held that a party, who held by patent from the State an absolute title, without restriction in the use or reservation, of both sides of the Saranac river for a distance of seven miles from Lake Champlain, had the right to erect and maintain at or near the mouth of the river a mill dam, although it operated to prevent salmon from going from the lake up the river, and that an act of the Legislature, passed after the patent, which required slopes to be made in mill dams of the character of defendant's so that salmon might freely pass over the dam, did not affect defendant's rights and as to them was unconstitutional. It was also held that the public had no right of fishery in the river within the bounds of the patent, it not being a navigable river.

In *Hooker* v. *Cummings* (20 Johns. 91) it was held that the owner of the adjacent land had the exclusive right of fishing in fresh water rivers, although in fact navigable and subject in that respect to a public easement. In this case it is said by Chief Justice SPENCER: "The Legislature have, confessedly, the right of regulating the taking of fish in private rivers, and do every year pass laws for that purpose, as to rivers not navigable in any sense, and which are unquestionably private property." The opinion in the *Platt* case was delivered by the same judge, and it is very clear that the ruling in that case was considered to be consistent with the conceded rule stated in the later case.

A large number of acts on this subject which were in existence at the time of the adoption of the Revised Statutes, and in many of which the power here challenged was exercised, will be found in volume 3 of the Revised Statutes (1st ed.), commencing at page 318. By section 15 of title 11, chapter 20, part 1 of Revised Statutes, power was given to the Courts of Common Pleas in the several counties of the State " to regulate the fishing in any of the streams, ponds or lakes in their respective counties ; and to make such order and rule to prevent the destruction of fish therein as they shall deem proper." A similar power was given to boards of supervisors by subdivision 13 of section 4 of .chapter 194 of the Laws of 1849. Numerous laws in the same line have been since passed. By chapter 721 of the Laws of 1871, entitled "An act to amend and consolidate the several acts relating to the preservation of moose, wild deer, birds and fish," it was, among other things, provided that no one should have in his possession after the same was killed any quail within certain dates of the year under a penalty of twenty-five dollars. This was held to be legal and that the Legislature had full power to pass the act although the quail were killed at a time when by the act the killing was not prohibited, or were brought from another State where there was no such prohibition. (*Phelps* v. *Racey*, 60 N. Y. 10.) In that case it is said by CHURCH, Ch. J., at page 14 : " The protection and preservation of game has been secured by law in all civilized countries, and may be justified on many grounds, one of which is for purposes of food. The measures best adapted to this end are for the Legislature to determine, and courts cannot review its discretion. If the regulations operate, in any respect, unjustly or oppressively, the proper remedy must be applied by that body. Some of the provisions of the act in question might seem, to one unversed in the mysteries of the subject, to be unnecessarily stringent and severe, but we cannot say that those involved in this action are foreign to the objects sought to be attained, or outside of the wide discretion vested in the Legislature."

The logic of that case would seem to sustain the law in question. The waters of Perch lake connected directly with the waters of Perch river and Lake Ontario, in which other parties and the public had an interest which was entitled to protection. The exclusive

right of fishing which the owners of the lake had was in subordina-
tion to the regulations to be prescribed .by the Legislature for the
general good. (3 Kent's Com. 418.) This was the rule at com-
mon law. (See chap. 5 of Lord HALE's treatise De Jure Maris, 16
Am. Rep. 58.)

A similar question has been considered in other States. In *Gen-
tile* v. *The State* (29 Ind. 409) a statute was under consideration
which declared it to be unlawful " to trap, net, shoot or sein fish,
in any of the lakes, rivers or small streams, within this State," for
the period of two years from the time the act took effect, and at all
times thereafter within certain days of the year. It was claimed
that the Legislature had no power to pass a law denying or abridg-
ing the right of the People of the State to fish in their own waters
and upon their own soil at pleasure; that the landowners derive
titles from the United States and their grants include all unnavi-
gable streams of water passing over their lands, with the exclusive
right to fish therein within their own boundaries, and that this right
to fish may be exercised at all times at the will of the landowner, and
is not subject to be controlled, restrained or abridged by the Legisla-
ture. This claim and argument were refuted by the court and the
law declared to be constitutional. A like view is taken in many
other Indiana cases. (See *State* v. *Lewis*, 33 N. E. Rep. 1024.)

In *State* v. *Roberts* (59 N. H. 484) a person was held liable for
catching fish in the prohibited season from water within his own
land, and it was said that " the fact that the fish were in water sur-
rounded by the defendant's land, unless the water was so inclosed
as to be absolutely within his control, and the free passage of the
fish to and from it was entirely and rightfully obstructed, gave him
no more property in them than he would have obtained in a wild
deer that came upon his land, or a wild bird that might have alighted
upon it." (See, also, *State* v. *Roberts*; 59 N. H. 256; *Vinton* v.
*Welch*, 9 Pick. 87; *Com.* v. *Look*, 108 Mass. 456; 8 Am. & Eng.
Ency. of Law, 34.)

In *The People* v. *Bridges* (142 Ill. 30) the defendant was prose-
cuted for the violation of an act that declared it to be unlawful for
any person to catch or kill any fish with any seine " in or upon any
of the rivers, creeks, streams, ponds, lakes, sloughs, bayous or other
watercourses wholly within or running through the State of Illinois,"

with some exceptions not important to be here stated. The fishing by defendant was in a small lake entirely on the land of one Miller, who authorized the defendant to fish. The lake was a short distance from the north fork of Sangamon river, which was not a stream or river used for navigation. During high water in spring and fall, the waters of the lake were connected with the waters of the river, this connection lasting at times for a period of several days or weeks. When there was no high water in the river, the lake was entirely shut in, and its waters did not mingle at all with the waters of the river. The fishing was in the month of July. It was held that the act was constitutional and valid, and that the defendant was liable. It was also held that the lake was within the statute, although the expression " other watercourses " was used in it.

It must be held, we think, that the Legislature had the power to pass the act in question, and that it does not infringe upon any constitutional rights of the defendant.

It is further urged by the defendant that the act only applies to and affects the public waters of the State, and does not apply to a body of water, like Perch lake, which is entirely on land owned by private individuals. The act is in its terms certainly broad enough to cover Perch lake. It includes " any creek, lake or river, or inland waters in the county of Jefferson." There is no indication of any intention to exclude a body of water like Perch lake, which directly connects at all seasons of the year with a river of considerable size which empties into Lake Ontario. It is very clear, especially in view of the current legislation on the subject, that the object of the law would not be attained by applying it simply to public waters. There is no such basis for an implied reservation as there was in *People* v. *Platt* (*supra*), upon which defendant relies.

The defendant further claims that the act in question, if construed to cover private as well as public waters, covers two subjects, and is, therefore, in violation of the provision of the Constitution which requires that no local bill shall embrace more than one subject, and that shall be expressed in the title. No distinction is made in the act between public and private waters. The subject is a single one and that is the prevention of fishing in certain waters by other means than angling. The title is sufficiently specific. (*Neuendorff*

*v. Duryea*, 69 N. Y. 557; *Astor* v. *Arcade R. Co.*, 113 id. 110.)
This objection to the act is not, we think, well taken.

These considerations lead to an affirmance of the judgment.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.