UNITED STATES of America,
Plaintiff,

v.

POLAN INDUSTRIES, INC., Defendant.

Civ. A. No. 1018.

United States District Court
S. D. West Virginia,
at Huntington.

July 25, 1961.

Duncan W. Daugherty, U. S. Atty., Huntington, W. Va. (Louis F. Oberdorfer, Asst. Atty. Gen., Richard M. Roberts and Norman E. Bayles, Attys., Dept. of Justice, Washington, D. C., on the brief), for plaintiff.

E. Jackson Boggs, Huntington, W.Va. (Fitzpatrick, Huddleston & Bolen, Huntington, W. Va., on the brief), for defendant.

HARRY E. WATKINS, District Judge.

The question to be decided in this case is whether a state statute of limitations is effectively tolled, in favor of the tax collecting authority of the United States and against a debtor of the taxpayer, when the United States makes its assessment against the taxpayer rather

than when the United States sues the debtor.

On May 16, 1958, a delegate of the Secretary of the Treasury of the United States made an assessment against the Huntington Processing and Packaging Company, Huntington, West Virginia, for income taxes incurred by that company. The assessment was made for the fiscal year ending June 30, 1955, and in the total amount of $36,370.76. Notice of and demand for payment of the aforementioned tax liability were made upon the Huntington Processing and Packaging Company on May 16, 1958. Notice of the federal tax lien was filed with the Clerk of the Cabell County Court, Huntington, West Virginia, on June 2, 1958. No payments have been made against this indebtedness and there is now an outstanding balance due and owing by the Huntington Processing and Packaging Company upon said assessment of $36,370.76 together with interest and costs as provided by law.

Prior to the assessment and starting in 1954, loans had been made by the Huntington Processing and Packaging Company to the defendant, Polan Industries, Inc. These loans were reflected in the books of Polan Industries, Inc., and totalled $153,500. Apparently no other written evidence of the indebtedness was ever given. The books of Polan Industries, Inc., further show that two payments were made by Polan Industries, Inc., to the Huntington Processing and Packaging Company, thereby reducing the outstanding balance due to Huntington Processing and Packaging Company to $127,500.

On June 23, 1959, the Secretary of the Treasury caused a Notice of Levy to be served upon the defendant to satisfy the tax liability of Huntington Processing and Packaging Company. The notice demanded that the defendant turn over all property in its possession belonging to the taxpayer, Huntington Processing and Packaging Company, to the extent of the then outstanding tax liability, including accrued interest of $38,444.54. The defendant refused and has to this date refused to turn over this amount to the plaintiff or its representative. The present action was commenced by the filing of the complaint with this court on April 21, 1960.

Jurisdiction of this action is conferred upon this court by Sections 1340 and 1345 of Title 28, United States Code, and Section 6332 of the Internal Revenue Code of 1954, 26 U.S.C. § 6332, in that this is a civil action arising under the Internal Revenue laws of the United States wherein the United States seeks to recover a judgment pursuant to Section 6332 of the Internal Revenue Code of 1954.

The defendant was permitted to amend its answer and, by so amending, now relies solely on the defense of the statute of limitations. The defendant asserts that the obligation it incurred by accepting loans from the Huntington Processing and Packaging Company is governed by the five-year statute of limitations of West Virginia Code, ch. 55, art. 2, § 6 (Michie 1955); that the commencement of a suit by Huntington Processing and Packaging Company would be necessary to stop the running of the statute of limitations; that since the United States has stepped into the shoes of the Huntington Processing and Packaging Company, it too had to file suit to stop the running of the statute of limitations; that at the time the United States commenced this action (April 21, 1960) the defendant was indebted to Huntington Processing and Packaging Company for only $13,500; that the balance of the debt was barred by the statute of limitations; and that, therefore, the United States is likewise barred from recovery on that balance.

The United States has met this defense with the assertion that a state statute of limitations does not run against the United States once it has acquired a right in the taxpayer's property; that the moment the tax assessment is made is the moment of such acquisition, according to applicable Internal Revenue statutes; and that, therefore, the state statute of limitations was tolled at the

moment of tax assessment, notwithstanding the fact that the taxpayer's property is in the form of a debt owed by a third party against whom the United States is now proceeding.

The parties agree to the general rule that the United States is not subject to state statutes of limitation once the United States has acquired an interest in the taxpayer's property. The parties also agree that the applicable statute of limitations is one of five years under West Virginia Code, ch. 55, art. 2, § 6 (Michie 1955). Thus, the one issue for decision is whether the act of tax assessment against the Huntington Processing and Packaging Company on May 16, 1958, effectively tolled the statute of limitations applicable to the debt owed to that company by the defendant, so that the United States may now satisfy the full tax indebtedness of Huntington Processing and Packaging Company by collecting that amount from the debt owed to that company by Polan Industries. Stated another way: Was the United States able to stop the running of the applicable statute of limitations only by starting a suit since it stepped into the shoes of the creditor-taxpayer against the debtor, Polan Industries, Inc.; and, therefore, is the United States limited to a recovery of $13,500 from the debtor of the taxpayer since the United States did not start its suit until April 21, 1960?

The parties have agreed that should the court decide the issue of the statute of limitations in favor of the defendant, then the court will enter judgment for the plaintiff and against the defendant in the amount of $13,500 with interest from June 23, 1959, and without costs. Conversely, should the question of the statute of limitations be decided in favor of the plaintiff and against the defendant, then judgment will be entered for the sum of $38,444.54 with interest thereon from June 23, 1959, and costs.

The main thrust of defendant's argument is that the United States is in exactly the same legal relationship to the defendant as that legal relationship which exists between Huntington Processing and Packaging Company and the defendant. This is so, says the defendant, because the United States is seeking to satisfy a tax liability of Huntington Processing and Packaging Company by recovering part of an amount owed to that company by one of its debtors. The right, therefore, upon which the United States proceeds is derivative. Thus, continues the defendant, if Huntington Processing and Packaging Company had to sue to stop the running of the statute of limitations, so also is the United States bound to sue in order to stop the running of the statute.

Defendant's position is only partially correct, and that portion which is incorrect is fatal to defendant's cause.

█ The general rule, undisputed in this case, is that a state statute of limitations does not run against the United States once the United States acquires its right. United States v. Summerlin, 1939, 310 U.S. 414, 60 S.Ct. 1019, 84 L. Ed. 1283. The defendant claims an exception to this rule where, as here, the right upon which the United States is proceeding has been derived from a preexisting creditor-debtor relationship between the taxpayer and defendant; that, therefore, the United States must not only acquire the right but also must sue on that right in order to stop the running of the statute of limitations. But the derivative nature of the right upon which the United States is proceeding is relevant only at the moment that right is acquired, and at no time thereafter. Further, the element of derivation goes only to the *right* and not to the *remedy* for the enforcement of that right. If, at the moment the United States acquired the right to proceed against defendant that right possessed an infirmity, then the United States would be subject to the infirmity because the United States takes the right exactly as it is in the hands of the one from whom it is derived. This is the point where the derivative nature of the right is pertinent; however, once the right has been acquired by the United States, no infirmity may attach to bar its

enforcement unless, of course, the United States has consented to be bound by a subsequent infirmity. The fact that the statute of limitations on the debt would have continued to run as against Huntington Processing and Packaging Company and in favor of the defendant, does not aid the defendant against the United States. Once the rights in that debt have been acquired by the United States, then the United States is not subject to the same limitations on the remedy for that right which existed when the right was in the hands of the Huntington Processing and Packaging Company. These principles are well-illustrated by the cases of United States v. Nashville, C. & St. L. R. Co., 1886, 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81 and United States v. Summerlin, supra.

The Nashville case involved a suit by the United States for interest payable on negotiable bonds owned by the United States, which bonds had been purchased by the United States before maturity from third parties. The defense asserted was the state statute of limitations which had not run at the time of purchase by the United States, but which had run at the time of suit. The language of the Court is clear:

"It is settled beyond doubt or controversy—upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided—that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations unless congress has clearly manifested its intention that they should be so bound. (citing cases.)

"The nature and legal effect of any contract, indeed, are not changed by its transfer to the United States. When the United States, through their lawfully authorized agents, become the owners of negotiable paper, they are obliged to give the same notice to charge an endorser as would be required of a private holder. (citing cases) They take such paper subject to all the equities existing against the person from whom they purchase at the time when they acquire their title; and cannot therefore maintain an action upon it if at that time all right of action of that person was extinguished, or was barred by the statute of limitations. (citing cases.)

"But if the bar of the statute is not complete when the United States become the owners and holders of the paper, it appears to us * * * impossible to hold that the statute could afterwards run against the United States." 118 U.S. at pages 125–126, 6 S.Ct. at page 1008.

In the Summerlin case the Federal Housing Administrator, acting on behalf of the United States, had become the assignee of a claim against the estate for which the defendant was ancillary administratrix. The United States filed its claim against the estate after the statute of limitations for filing ordinary claims against estates had passed, and the lower courts held that the United States was barred. The Supreme Court of the United States reversed, again using extremely clear language:

"When the United States becomes entitled to a claim, acting in its governmental capacity, and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." 310 U.S. at page 417, 60 S.Ct. at page 1020.

The defendant, in its reply brief, has attempted to distinguish these cases from the one at bar by asserting that in both of these cases the government had become the actual owner of the choses-in-action as opposed to proceeding, as in this case, as a third party against a pre-existing creditor-debtor relationship; and by asserting, therefore, that in both

of these cases the government was acting not in a derivative capacity but in its governmental capacity. This attempted distinction has no merit. The United States, when proceeding on a claim derived from a pre-existing creditor-debtor relationship in order to obtain tax revenues, is acting in a governmental capacity just as much as it is when the claim is not a derivative one. As pointed out above, the derivative element is relevant only as to infirmities existing in the claim at the moment of acquisition by the United States. It has no bearing on subsequent obstacles to the enforcement of that claim.

The issue in this case has been passed on only in one other case. The case of United States v. Jacobs, D.C.D.N.J.1957, 155 F.Supp. 182 involved loans made by the taxpayer over a period of time. A notice of levy was served upon the debtor and the debtor defended on the ground that the applicable six year statute of limitations had expired, thereby barring the creditor taxpayer (hence barring the United States) from bringing suit on the debt. The case is thus on all fours with the one at bar. The court held that the running of the statute of limitations on the debt was tolled at the moment the government's lien arose which, under the Internal Revenue Code of 1939, was at the time the Collector of Internal Revenue received the assessment list. The court in effect held, therefore, that the derivative nature of the government's claim was of no importance as to the remedy on that claim—i. e., the derivative element would not alter the rule suspending the statute of limitations at the moment of acquisition.

It is important to note that the Jacobs decision was based on Sections 3670 and 3671 of the Internal Revenue Code of 1939, 26 U.S.C. §§ 3670, 3671. The counterparts of these sections in the Internal Revenue Code of 1954 are Sections 6321 and 6322, 26 U.S.C. §§ 6321, 6322. Section 6321 (and Section 3670 of the 1939 Code) create the lien for taxes and are substantially the same, Section 6321 being quoted here:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

However, Section 6322 of the Internal Revenue Code of 1954 contains an important alteration from the language of its counterpart in the Code of 1939, Section 3671. Section 3671 of the 1939 Code provided that the lien created by Section 3670 should arise at the time the assessment list was received by the collector. This was the section with which the Jacobs decision was concerned. Its counterpart, Section 6322 of the 1954 Code, provides that the lien created by Section 6321 shall arise at the time the assessment is made. Neither section makes a distinction and exception, as defendant would have us do, where the lien is derived from a pre-existing creditor-debtor relationship between the taxpayer and the defendant, and the court in the Jacobs decision has not seen fit to read this distinction and exception into them.

The defendant seeks to dilute the influence of the Jacobs decision: A. by referring to it as dictum; B. by arguing that such a holding is an unjust burden on the debtor of the taxpayer in that said debtor ought to be able to rely on the statute of limitations applicable to the relationship with his creditor as determinative of the length of his liability; C. by pointing out that the holding serves only to increase the already lopsided advantages the government possesses as far as the collection of taxes is concerned. Each of these contentions will be discussed in turn.

A. The charge of dictum has little effect outside of relieving the possible pressure provided by the principle of stare decisis. Granting, arguendo, that a particular discussion may be un-

necessary to the decision in a case (and therefore becomes dictum) the discussion is of no less importance to the decision in later cases if the reasoning which supports it is sound. The Jacobs case saw no reason to judicially provide an exception to the rule, that the statute of limitations does not run against the government, where the government's claim was based upon a pre-existing creditor-debtor relationship between the taxpayer and the defendant. The statute provided (as Section 6321 now provides) that the tax lien of the United States was upon all property and rights to property, whether real or personal, belonging to the taxpayer. Int.Rev.Code of 1939, § 3670. The statute did not contain, nor does it today contain, any indication of Congressional intent to subject the government, under the circumstances of this and the Jacobs case, to the exception which the defendant has suggested. The immunity of the sovereign from the defense of the statute of limitations is, unless expressly waived, implied in all Federal enactments. Board of Com'rs of Jackson County v. United States, 1939, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313. Thus, the general rule as to tolling the statute of limitations at the moment of acquisition applies until, " * * * Congress has clearly manifested its intention that they should be so bound." United States v. Nashville C. & St. L. R. Co., supra [118 U.S. 120, 6 S.Ct. 1008].

■■ B. To judge this point in defendant's critique of the Jacobs case it is necessary, first of all, to remember the nature of a statute of limitation. A statute of limitation is merely a legislative device to prevent unjust harassment of debtors and on the contrary to compel assertion of legal rights within reasonable time limits. It must also be remembered that the statute of limitations does nothing to a valid obligation outside of preventing its enforcement. The obligation still exists and may be revived for enforcement by certain well-recognized acts. In our society the proper assumption should be that people enter into contractual obligations with an eye to-ward honoring these obligations rather than, as defendant suggests, with an eye toward becoming entitled to a statutory defense to the obligation by reason of lapse of time. The atmosphere of distrust created by this latter approach would be far worse than the inconvenience provided by the extended time for liability under the Jacobs decision.

■■ The defendant also points to the possibility of double payment by the debtor of the taxpayer. In this regard, there is ample protection afforded. The government acquires its lien by the assessment; however, in order to place the debtor under an obligation to pay only to the government, levy and demand must be made. Int.Rev.Code of 1954, § 6332(a). There is little doubt that, prior to this procedure, if the debtor had no actual notice of the government's lien he could discharge his debt, and escape liability to the government, by payment to the creditor. United States v. Eiland, 4 Cir., 1955, 223 F.2d 118.

C. There is probably no other aspect of governmental activity that is more roundly criticized than the tax collecting activity. If lopsided advantages have accrued to the government in this area, perhaps these advantages are necessary in order that the sovereign may obtain the revenues which are vital to its existence and vital to its task of providing for the general welfare; nevertheless, some of these criticisms may be salient, but in cases where the law is clear the court must enforce it, salient criticism to the contrary notwithstanding. In these areas legislative correction, rather than judicial manipulation, is the proper course to be followed.

■ This court holds that a lien in favor of the United States attached to the debt owed to the taxpayer, Huntington Processing and Packaging Company, by the defendant, Polan Industries, Inc., when the tax assessment was made against Huntington Processing and Packaging Company on May 16, 1958; that the creation of this lien tolled the statute of limitations on the debt as

against the United States; and, therefore, that the United States is entitled to judgment of $38,444.54 with interest thereon from June 23, 1959, and costs against defendant Polan Industries, Inc.