**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Morris WEINTRAUB, Defendant-Appellant.**

**No. 77–3273.**

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1979.

Decided Dec. 19, 1979.

505 F.2d at 1383.

William C. Oldfield, Cobb, Combs & Oldfield, Covington, Ky., for defendant-appellant.

Griffin Bell, Atty. Gen. of United States, Myron C. Baum, Gilbert Andrews, Tax Div., App. Section, Donald R. Anderson, Crombie J. D. Garrett, Michael J. Roach, Dept. of· Justice, Washington, D. C., Gerald F. Kaminski, Asst. U. S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Before CELEBREZZE, KEITH and MERRITT, Circuit Judges.

CELEBREZZE, Circuit Judge.

This appeal concerns the rule *nullum tempus occurrit regi*—the sovereign is exempt from the consequences of laches and the operation of statutes of limitations. The rule is of ancient origin and, while its original rationale of royal prerogative no longer holds sway, the maxim remains vital based upon the public policy of preserving public rights and revenues from the neglect of public officers. This principle causes us to affirm a civil tax judgment in favor of the United States in the face of an argument that the action was time-barred.

## I.

■ The facts involved in this cause are somewhat complicated but can be fairly distilled as follows. Defendant-appellant, Morris Weintraub, is a Kentucky attorney. In 1959 appellant and his brother, Erving Weintraub, obtained interests in two parcels of real estate in Arizona, which they hoped to resell at a profit.[1] They had difficulty making the scheduled payments for this land. Among other means employed to shore up their financing, in 1960 appellant and his brother borrowed $135,000 from Frank Andrews, a client of appellant, and made a required payment.[2]

1. One parcel was in the name of appellant and his wife, but it was understood that appellant's brother had a one-third interest in it.

2. The loan was evidenced by a note signed by appellant and his brother bearing six percent interest. The note recited that it was secured by the Arizona real estate, (App. 659), but it does not appear that Andrews ever recorded any such "security interest," (App. 696–97). See note 3, infra.

3. One parcel had been purchased under an Agreement of Trust and the other under an installment contract, with the latter parcel eventually assigned to another trust. Thus, the interests in the real estate were often "assigned" rather than "conveyed." The interests could be redeemed from the trusts by repayment of the loans.

4. The loans took the form of Chalfen and Hecht making the payments appellant and his brother were required but unable to make.

Loans had previously been received from two other individuals, Messrs. Chalfen and Hecht, who secured their loans by having partial interests in both parcels assigned to them.[3] Despite several extensions of time appellant and his brother were still unable to make the payments on the parcels or otherwise dispose of them, so in 1961 further loans were obtained from Chalfen and Hecht.[4] In exchange Chalfen and Hecht obtained a complete assignment of all interests in both parcels.[5] Other than a payment in 1961 on the note to Andrews,[6] no other payments were made by appellant or his brother. In May 1962 appellant and his brother were sued in Arizona state court by Chalfen and Hecht. Pursuant to the settlement of that lawsuit in November 1962, appellant and his brother executed a deed and assignment of all their interests in the two real estate parcels to Chalfen and Hecht.[7]

On May 2, 1963, the Internal Revenue Service (IRS) assessed wagering taxes in the amount of $688,734 against Frank Andrews. On May 3, 1963, the IRS served appellant with a notice of levy on the property of Andrews (and others), pursuant to Internal Revenue Code § 6332,[8] which requires third persons in possession of a taxpayer's property or property rights subject to levy upon which a levy has been made to

5. There is a dispute as to whether this assignment was "absolute" or more like a "security interest." See note 18, infra, and accompanying text.

6. This payment reduced the principal balance on the note to $120,760.

7. The judgment entry provided that "Chalfen is the absolute owner in fee simple, subject only to the equities of . . . Hecht [and others]," of both parcels. Appellant and his brother had an option to repurchase the land until March 10, 1963, which option was never exercised. (App. 678–83).

8. I.R.C. § 6332 provides:

(a) **Requirement.**—Except as otherwise provided in subsection (b), any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge

surrender such to the IRS. Appellant replied in August 1963 to the final demand for surrender of the amount he owed to Andrews by writing on the final demand: "Nothing due or owed by me to Any of above at time of service on 5/2/63 or now." (App. 695).

The next action taken against appellant was in April 1964, when appellant was indicted for willfully failing to honor the notice of levy and two counts of making false statements to the IRS. Appellant was acquitted on all three counts after trial in September 1965.

such obligation) to the Secretary or his delegate, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

**(b) Special rule for life insurance and endowment contracts.—**

**(1) In general.—**A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary or his delegate for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary or his delegate that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

**(2) Satisfaction of levy.—**Such levy shall be deemed to be satisfied if such organization pays over to the Secretary or his delegate the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323(i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

**(3) Enforcement proceedings.—**The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

**(c) Enforcement of levy.—**

**(1) Extent of personal liability.—**Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at an annual rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331(d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

**(2) Penalty for violation.—**In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

**(d) Effect of honoring levy.—**Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary or his delegate, surrenders such property or rights to property (or discharges such obligation) to the Secretary or his delegate (or who pays a liability under subsection (c)(1) shall be discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment. In the case of a levy which is satisfied pursuant to subsection (b), such organization shall also be discharged from any obligation or liability to any beneficiary arising from such surrender or payment.

**(e) Person defined.—**The term "person," as used in subsection (a), includes an officer or employee of a corporation or a member or employee of a partnership, which as such officer, employee, or member is under a duty to surrender the property or rights to property, or to discharge the obligation.

Subsections (b), (c)(2) and (d) were added to § 6332 by the Federal Tax Lien Act of 1966, P.L. 89–719, 80 Stat. 1125. Subsection (c)(1) was slightly modified subsequently in a way not material to the instant case. P.L. 93–625, 88 Stat. 2115; P.L. 94–455, 90 Stat. 1710.

No further action was taken by the IRS vis-a-vis appellant until the filing of the complaint in the instant case in January 1976. This action was brought pursuant to § 6332(c) to enforce the personal liability of appellant for failure to honor the notice of levy served upon him in May 1963.[9] Appellant moved for summary judgment in the district court arguing, *inter alia*, that the suit was barred by laches and the statute of limitations. This motion was denied without opinion. At trial, the sole issue for the jury to determine was whether appellant was, in fact, indebted to Andrews on May 3, 1963, when he was served with the notice of levy. The jury found that appellant was so indebted [10] and found in favor of the government in the amount of $120,760.[11] See 77–2 U.S.T.C. ¶ 9576 (S.D.Ohio 1977).

Appellant's defense at trial was simply that he was not indebted to Andrews on May 3, 1963, and thus was not then in possession of any of Andrews' property or property rights. This would have absolved appellant of liability for refusal to honor the notice of levy. He admitted that he received the $135,000 loan from Andrews in 1960. But he contended that he had satisfied that debt in May 1962 by transferring to Andrews a 77% interest in the two Arizona land parcels. As evidence of this appellant pointed to two documents dated May 1962. The first was labelled "Assignment" and purported to transfer the 77% interest from appellant and his brother to Andrews. The second was labelled "Agreement and Assignment" and purported to embody an agreement between appellant, his brother and Andrews that Andrews would accept the 77% interest in the Arizona land in satisfaction of the $135,000 loan.

The government successfully argued, however, that these documents were not what they purported to be. The "Assignment," which had a place for both appellant's and his brother's signatures, was signed only by appellant in May 1962. (App. 548). The "Agreement and Assignment," which had a place for appellant's, his brother's and Andrews' signature, was signed only by appellant and Andrews in May 1962.[12] (App. 549–50). Thus, the documents were ineffective to transfer any interest in the realty to Andrews in May 1962 since the necessary signature of appellant's brother was missing on each.[13] While appellant's brother did eventually sign copies of both documents, (App. 488–90), it is conceded by appellant that this did not occur until May or June 1963, after the notice of levy had been served on appellant, and that the documents were back-dated to May 1962 by appellant's brother at appellant's request.[14] Thus, the documents were still ineffectual to transfer any interest to An-

**9.** "The proceeding authorized is not an action in rem, nor is it a suit for the collection of a tax. It is a suit to enforce personal liability for failure to surrender property belonging to a delinquent taxpayer." *Commonwealth Bank v. United States*, 115 F.2d 327, 330–31 (6th Cir. 1940).
 *See generally United States v. Euclid Nat'l Bank*, 510 F.2d 461 (6th Cir. 1975).

**10.** There is no merit to appellant's argument that he was denied due process because the jury deliberated only 150 minutes. He has cited no authority in favor of such a proposition, nor do we know of any.

**11.** This was the principal balance on the note as of May 3, 1963. *See* note 6, *supra*. It is unexplained why the judgment did not include accrued but unpaid interest on the note or statutory interest from the date of levy. *See* § 6332(c)(1).

**12.** The government has suggested that Andrews never signed this document, or at least not in May 1962. The government concedes that appellant probably signed this or a related document in May 1962. *See* note 15, *infra*.

**13.** Any fair reading of the documents indicates appellant's brother's signature was necessary. In the alternative, the jury would have been entitled to conclude that Andrews never signed the "Agreement and Assignment" or even that appellant did not sign it in May 1962. *See* note 12, *supra*.

**14.** There is no merit to appellant's contention that the district court erred in excluding these back-dated versions of the documents. The district court acted within its discretion in excluding these doctored, potentially confusing exhibits.

drews in May 1962 or anytime before May 3, 1963.[15]

Other evidence submitted by the government attested to the ersatz nature of the "Assignment" and "Agreement and Assignment." In a letter to Chalfen in April 1963, eleven months after appellant allegedly satisfied his debt to Andrews, appellant wrote: "As you know, I borrowed $135,000.00 from Frank Andrews and if it takes the rest of my life to repay him, I will just have to do it." (App. 687). And in May 1963, just after the notice of levy was served on appellant, he wrote the following to his brother:

> Here are 3 things:
>
> 1. * * *
>
> 2. NOTICE OF LEVY served on my Friday. . However, you will recall that Andrews notified us he had transferred the note to MIKE MAZZARO, a relative of his who lives near Pittsburgh. That was some time ago . . . you can't recall, but it was done. This in case an IRS agent happens to call on you. In other words Andrews has no further interest in the note—his relative Mazzaro owns it. I inform you because they may serve you as the note was signed by both of us, so you will know. I was afraid of this right along as I kept telling you. But I think it is O.K.
>
> 3. NOTICE OF FEDERAL TAX LIEN, etc. which you will note the original is being filed in Maricopa County, but I talked to you on phone about this.
>
> RETURN THESE AT ONCE TO ME. AT ONCE.

> TEAR UP THESE NOTES, PLEASE . . . as soon as you read them . . don't leave lay around house.
>
> * * * * * *
>
> Erv, please, get me back those papers from Bellemack—if he has them. He indicates you have. You think I have been handing you a line, but you can see that what I have been telling you is so . . return these enclosed to me, and then get those papers and mail back to me separately, or if will be there Friday, have ready for me and I will take back with me . . .
>
> THIS IS SERIOUS. . . . .
>
> TEAR THIS UP WHEN FINISHED READING.

(App. 692–93. Errors in Original.)[16]

Appellant's instructions to have this communication destroyed obviously were not followed and equally obvious is the letter's import. Other documentary evidence submitted by the government also was inconsistent with appellant's contention that he had satisfied his debt to Andrews by May 3, 1963.[17]

The government further argued at trial that the alleged May 1962 assignment of the land to Andrews was impossible because appellant had no interest in either parcel at that time which he could have assigned. Both parcels had been completely assigned to Chalfen and Hecht by 1961. While appellant argued that these assignments were in the nature of a security interest or mortgage to secure Chalfen's and Hecht's loans, the government pointed to documentary evidence which indicated that the transfer to them was absolute and in satisfaction of

---

**15.** Moreover, there was no provision on either document for appellant's wife to sign even though she was partial record owner of one parcel. *See* note 1, *supra.* It does appear that appellant and his wife both signed "Applications to Assign" one parcel in May 1962 but there was no indication that these documents were ever delivered, filed or otherwise utilized. (App. 698–99).

**16.** There was some suggestion in appellant's testimony that he concocted the story about Andrews transferring the note to Mazzaro in order to delude appellant's brother's wife and

that the instructions to destroy the note were put in at his brother's request. (App. 258–64). The jury was entitled to disbelieve this implausible explanation.

**17.** For example, in June 1962 Andrews wrote to the trustee of the trusts containing the real estate parcels: "I hereby absolutely and irrevocably waive and release any and all right, title, interest, lien, claim or demand that I may now have or that may arise hereafter against those [parcels.]" (App. 696–97).

their loans. (App. 635; 637; 656). This was confirmed by the settlement of the 1962 lawsuit which yielded a complete transfer by appellant and his brother of all interests in the two parcels to Chalfen and Hecht.[18] (App. 666–70). Indeed, it is implausible that appellant and his brother actually transferred a 77% interest in the real estate to Andrews in May 1962 in light of their settlement agreement in November 1962 to transfer a 100% interest in the same real estate to Chalfen and Hecht.

We find there was substantial evidence to support the jury's verdict. The evidence more than sufficed to allow the jury to conclude that appellant was indebted to Andrews on May 3, 1963. Appellant's contention that the verdict was "contrary to and not supported by the evidence" is wholly without merit.[19]

## II.

The principal contention raised by appellant before this court is that this action was time-barred by both laches and the statute of limitations. We find no merit to either branch of this claim.

The rule that the government is exempt from the consequences of its laches and from the operation of statutes of limitations—*nullum tempus occurrit regi*—had its genesis in English common law notions of prerogative of the Crown. The principle is well established in this country, but based upon the important public policy of preserving public rights and revenues from the negligence of public officers. *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132–33, 58 S.Ct. 785, 82 L.Ed. 1224 (1938).[20]

Despite overwhelming authority to the contrary, appellant argues that this is a

case in which the sovereign should be barred by laches. He notes the almost eleven year delay between his acquittal on the criminal charges in 1965 and the filing of this action in 1976—and the almost thirteen year delay since service of the notice of levy in 1963. Appellant claims that during this delay he destroyed most of his records concerning this matter. Appellant's brother, who has since died, was in failing health at the time of trial and remembered little of what happened. The IRS special agent who worked on appellant's criminal case, appellant's attorney in the criminal case, appellant's brother's wife and, importantly, Andrews had all died by the time this action was commenced.

Appellant argues that the Supreme Court's decision in *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961), leaves open the door to making a laches argument ever so slightly. In *Costello* the Court noted cases that had "applied the principle that laches is not a defense against the sovereign" and stated "[t]his Court has consistently adhered to this principle." *Id.* at 281, 81 S.Ct. at 543. But because the Court had never so held in the type of case at issue here (denaturalization), it went on to say that even if laches applied the petitioner had failed to prove the elements of the defense. *Id.* at 282, 81 S.Ct. 534. Appellant contends that the fact that the Court at least considered laches in *Costello* suggests that in a proper case it could be a defense against the sovereign.

We disagree with this reading of *Costello*. The language quoted above admits to no exceptions to the rule that laches cannot defeat the government. This rule is of such long standing that we do not believe the Supreme Court would carve out an excep-

---

**18.** Appellant and his brother did retain an option to repurchase the land, which option eventually expired. *See* note 7, *supra*.

**19.** The resolution of this case turned in substantial part on appellant's credibility, which was solely within the province of the jury. The government's brief points to two examples of deceit by appellant which could have graphically demonstrated to the jury that appellant was not very credible. (U.S.Br. at 30–31).

**20.** This is to be distinguished from "a case relating to the application of the law merchant as to the transfer of negotiable paper [and] the incurring by the United States of certain responsibilities by becoming a party to such paper." *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940). *See also Clearfield Trust Co. v. United States*, 318 U.S. 363, 369, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

tion to it without expressly saying so. The fact that the Court did analyze, and reject, the laches argument in *Costello* was more in the nature of an alternative holding which did not detract from the primary holding that laches was inapplicable.

Moreover, even if we were to agree that *Costello* left the door slightly open to a laches defense here, as in *Costello* the crack is not wide enough to allow appellant inside. "Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Id.* There is no question that it would have been preferable, from all viewpoints, for the government to have filed this action sooner than it did. But it cannot be said that there was a lack of diligence by the IRS sufficient for a laches defense inasmuch as the IRS was attempting between 1963 and 1976 to collect from Andrews the taxes he owed, upon which appellant's liability was predicated.[21] Indeed, it was completely reasonable for the IRS to proceed initially against Andrews since collection from him could have obviated this proceeding. And the prejudice appellant argues he has suffered is speculative, at best, and certainly was no greater than the prejudice to the government in trying its case. *See id.* at 282–83, 81 S.Ct. 534. This case was based almost entirely upon documentary evidence and, to a lesser extent, appellant's credibility, neither of which were greatly affected by the lapse of time. Finally, laches is an equitable defense and, putting to one side the fact that this is a legal action for damages, it can certainly be raised only by one who comes into equity with clean hands.[22] The letter noted above sent by appellant to his brother, containing instructions on defrauding the IRS, was more than enough to soil appellant's hands.

Appellant next argues that this case is barred by the statute of limitations. While the general rule stated above is that the sovereign is exempt from the operation of statutes of limitations, an exception to that general rule exists when the sovereign (through the legislature) expressly imposes a limitation period upon itself. *Guaranty Trust, supra,* 304 U.S. at 133, 58 S.Ct. 785; *United States v. Frank B. Killian Co.,* 269 F.2d 491, 494 (6th Cir. 1959).[23] Thus, the issue at hand is whether Congress has imposed a statutory limitation period on suits to enforce the personal liability imposed by § 6332 on persons who refuse to honor a notice of levy. We find no such limitation applicable to § 6332.

The only statute urged by appellant as applicable is Internal Revenue Code § 6502.[24] This section requires that the IRS

---

21. The IRS also sought, unsuccessfully, to collect Andrews' tax liabilities from Mazzaro. *See* note 16, *supra,* and accompanying text.

22. Laches is purely an equitable doctrine. *See generally* 27 Am.Jur.2d *Equity* § 153. A venerable equitable maxim is that "He who comes into equity must come with clean hands." *See* 30 C.J.S. *Equity* § 93. The clean hands maxim is typically employed by a defendant against a plaintiff who seeks equitable relief, but it applies equally to a defendant who seeks equitable relief from the chancellor. *See id.* § 96. While it is not normally employed against a defendant merely brought to court by the suit of another, insofar as appellant seeks to invoke the powers of the chancellor to bar the government's claim due to laches, we believe the clean hands maxim should apply to him. *See id.*

23. It is as true today, as when Mr. Justice Gray, wrote for the Court in *United States v. Nashville, etc. R. Co.,* 1886, 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81, "that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless congress has clearly manifested its intention that they should be so bound." 118 U.S. at page 125, 6 S.Ct. at page 1008; see: *Board of Com'rs of Jackson County v. United States,* 1939, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313; *Guaranty Trust Co. of New York v. United States,* 1938, 304 U.S. 126, 132–133, 58 S.Ct. 785, 82 L.Ed. 1224.
*United States v. Frank B. Killian Co.,* 269 F.2d at 494.

24. I.R.C. § 6502 provides:
(a) **Length of period.**—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
(1) within 6 years after the assessment of the tax, or

commence action to collect a tax, either by levy or proceeding in court, within six years after the assessment of the tax. Section 6502 only concerns actions against taxpayers, however, and not actions under § 6332 against third parties in possession of a taxpayer's property or property rights.

Appellant has cited absolutely no authority in support of his contention that the six year limitation of § 6502 applies to § 6332 and we have found none.[25] While we have found no case expressly holding that § 6502 is not applicable to § 6332, there is substantial authority which points to the conclusion that it is not.

■ First, for a statute of limitations to apply to the sovereign it must be expressly indicated in the statute. *Guaranty Trust, supra,* 304 U.S. at 133, 58 S.Ct. 785; *Frank B. Killian Co., supra,* 269 F.2d at 494. There is no express mention of § 6332 in § 6502 nor is the type of action brought under § 6332 even implicitly described in the language of § 6502. By its own terms, the limitation of § 6502 applies only to actions to collect a tax. The instant case, under § 6332, is not to collect a tax (although that is the intended indirect consequence of the suit), but rather is to enforce the personal liability for failure to surrender property after receiving a notice of levy.[26]

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under section 6343 after such 6-year period, then before such release).

The period so agreed upon may be extended by subsequent agreement in writing made before the expiration of the period previously agreed upon. The period provided by this subsection during which a tax may be collected by levy shall not be extended or curtailed by reason of a judgment against the taxpayer.

**(b) Date when levy is considered made.** —The date on which a levy on property or rights to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given.

Subsection (a) was modified slightly, in a manner not here relevant, by the Federal Tax Lien Act of 1966. P.L. 89–719, 80 Stat. 1146.

Second, this court and others have held that a person served with a notice of levy under § 6332 (or its predecessor) has only two possible defenses: 1) he is not in possession of property or a property right of the taxpayer;[27] or 2) the property is subject to prior judicial attachment or execution.[28] *Commonwealth Bank v. United States,* 115 F.2d 327, 330 (6th Cir. 1940). *See United States v. Sterling Nat'l Bank & Trust Co.,* 494 F.2d 919, 921 (2d Cir. 1974) (*citing cases*); *United States v. Trans-World Bank,* 382 F.Supp. 1100, 1105 (C.D. Cal.1974) (*citing cases*); *United States v. Polan Indus., Inc.,* 196 F.Supp. 333 (S.D.W. Va.1961); *United States v. American Exchange Irving Trust Co.,* 43 F.2d 829 (S.D. N.Y.1930). *See also United States v. Diamond,* 142 F.Supp. 441, 444 (S.D.N.Y.1956). This indicates that the statute of limitations is *not* a defense to a § 6332 suit.[29] While not analyzing the predecessor of § 6502, this was the precise holding of the *American Exchange* case.

■ Third, a review of the cases decided under § 6502 and its predecessor reveals that they uniformly concern actions against taxpayers and not third parties like appellant. And it is significant that these cases consistently hold that the only limitation of § 6502 is that the levy be made or proceeding in court begun against the taxpayer within six years of the assessment. There

**25.** The only case cited by appellant, *United States v. Home Beneficial Life Ins. Co.,* 73–1 U.S.T.C. ¶ 9345 (E.D.Tenn.1973), was a case in which the government sought to enforce a garden variety lien and there was no mention in the opinion of § 6332 or its provisions.

**26.** *See* note 9, *supra,* and note 32, *infra.*

**27.** This defense was resolved adversely to appellant by the jury.

**28.** This defense was not raised by appellant. Section 6332(a) also contemplates a similar defense that the property is not "subject to levy," which presumably refers to exempt property.

**29.** It is also no defense that there was no valid levy against the taxpayer. That is a matter for the taxpayer to raise. *Commonwealth Bank v. United States,* 115 F.2d 327, 329 (6th Cir. 1940). *Compare* I.R.C. § 7426(c).

is no time limit whatsoever on an action against the taxpayer to enforce a timely levy or judgment obtained in a timely filed court proceeding.[30] Thus, even if § 6502 could somehow be construed to apply to § 6332, its sole limitation period has been complied with by virtue of the timely levy against Andrews.[31] There is no limitation in § 6502 for enforcement actions, like the instant case, once the liability has been established, which occurred here by service of the notice of levy on appellant.[32]

■ Fourth, a review of the cases decided under § 6332 demonstrates that the procedures contemplated by § 6332 are consistent with there being no limitation period on actions to enforce a notice of levy. When a third party, like appellant, in possession of the property of a taxpayer is served with a notice of levy on the taxpayer's property, the appropriate procedure is that the third party immediately surrender the property to the IRS.[33] *See Flores v. United States,* 551 F.2d 1169, 1174 (9th Cir. 1977)

("... the purpose of the statute [§ 6332] is a coercive one which seeks to foster swift tender of property which has been levied upon."); *Determan v. Jenkins,* 111 F.Supp. 604 (N.D.Ga.1953); *United States v. American Exchange Irving Trust Co.,* 43 F.2d 829 (S.D.N.Y.1930). *See generally* Treas.Reg. § 301.6332–1(c). This is in accord with the principle that service of the notice of levy reduces the property or property right (such as the intangible debt in the instant case) to the constructive possession of the United States. *See In re Cherry Valley Homes, Inc.,* 255 F.2d 706, 707 (3d Cir.), *cert. den.,* 358 U.S. 864, 79 S.Ct. 96, 3 L.Ed.2d 97 (1958) (*citing cases*). *See also Phelps v. United States,* 421 U.S. 330, 334, 337, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). Since the notice of levy served on appellant reduced the debt owed to Andrews to the constructive possession of the United States, it would make no sense to impose a time limit upon bringing an action to enforce the notice of levy, which appellant

---

30. *Moyer v. Mathas,* 458 F.2d 431, 434 (5th Cir. 1972) (foreclosure suit twenty years after timely lien not time-barred); *United States v. Overman,* 424 F.2d 1142, 1147 (9th Cir. 1970) (foreclosure suit six years after judgment in timely suit not time-barred; tax liens are enforceable at *any time*); *Plisco v. United States,* 113 U.S. App.D.C., 177, 179 n. 1, 306 F.2d 784, 786 n. 1 (D.C.Cir.1962), *cert. den.* 371 U.S. 948, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) (§ 6502 requires only levy or suit within six years of assessment and does not limit means for enforcing assessment); *Hector v. United States,* 255 F.2d 84 (5th Cir. 1958) (suit filed within six years of assessment tolls limitation period *indefinitely*); *United States v. Ettelson,* 159 F.2d 193, 196 (7th Cir. 1947) (claim filed in probate court within six years of assessment sufficient to toll limitation period and judgment could be enforced *anytime* thereafter; there is no federal statutory provision as to period of limitation on enforcing judgment); *Investment & Securities Co. v. United States,* 140 F.2d 894, 896 (9th Cir. 1944) (no federal statutory limitation on enforcing judgment in timely suit; tax can be collected *at any time*); *United States v. Mandel,* 377 F.Supp. 1274, 1276–77 (S.D.Fla.1974) (follows *Moyer*); *United States v. American Cas. Co.,* 238 F.Supp. 36, 38–39 (W.D.Ky.1964) (follows *Ettelson*); *United States v. Caldwell,* 74 F.Supp. 114 (M.D.Tenn.1947) (no time limit on enforcing lien acquired in timely suit); *United States v. First Nat'l Bank,* 54 F.Supp. 351 (N.D. Ohio 1943) (same as *Ettelson* and *American Cas. Co.*).

31. Even if the levy against Andrews were not timely, appellant could not raise that issue. *See* note 29, *supra.*

32. The instant case is to be distinguished from one against a third party pursuant to I.R.C. §§ 6901, *et seq.*, wherein the liability of the third party is based upon being a transferee of the taxpayer. Transferee liability applies to a third party who stands in the shoes of a taxpayer and is imposed in a direct action to collect the tax due. In such a case, the six year limit of § 6502 applies to the transferee-third party. *United States v. Updike,* 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984 (1930). But the instant case is not an action to collect a tax and does not seek to impose transferee liability on appellant, so *Updike* is inapposite. *Hall v. United States,* 403 F.2d 344 (5th Cir. 1968), *cert. den.* 394 U.S. 958, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969); *United States v. Oscar Frommel & Bro.,* 50 F.2d 73 (2d Cir.), *cert. den.* 284 U.S. 647, 52 S.Ct. 25, 76 L.Ed. 549 (1931).

33. Surrender of the property to the IRS acts as a discharge of the liability to the taxpayer. § 6332(d). The same rule applied before the enactment of subsection (d) in 1966. (*See* note 8, *supra.*) *United States v. Bowery Savings Bank,* 297 F.2d 380 (2d Cir. 1961); *Hoye v. United States,* 277 F.2d 116, 120 (9th Cir. 1960); *United States v. Eiland,* 223, F.2d 118, 121–22 (4th Cir. 1955).

wrongfully failed to honor, to reduce the property right to the actual possession of the United States.

 The appropriate remedy for one in appellant's position, upon whom a notice of levy has been served which he believes to be wrongful, is to surrender the property and bring an action against the government pursuant to Internal Revenue Code § 7426.[34] Such a lawsuit is the appropriate

---

34. I.R.C. § 7426 provides:

**(a) Actions permitted.**—

**(1) Wrongful levy.**—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.

**(2) Surplus proceeds.**—If property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property junior to that of the United States and to be legally entitled to the surplus proceeds of such sale may bring a civil action against the United States in a district court of the United States.

**(3) Substituted sale proceeds.**—If property has been sold pursuant to an agreement described in section 6325(b)(3) (relating to substitution of proceeds of a sale), any person who claims to be legally entitled to all or any part of the amount held as a fund pursuant to such agreement may bring a civil action against the United States in a district court of the United States.

**(b) Adjudication.**—The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

**(1) Injunction.**—If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

**(2) Recovery of property.**—If the court determines that such property has been wrongfully levied upon, the court may—

(A) order the return of specific property if the United States is in possession of such property;

(B) grant a judgment for the amount of money levied upon; or

(C) grant a judgment for an amount not exceeding the amount received by the United States from the sale of such property.

For the purposes of subparagraph (C), if the property was declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

**(3) Surplus proceeds.**—If the court determines that the interest or lien of any party to an action under this section was transferred to the proceeds of a sale of such property, the court may grant a judgment in an amount equal to all or any part of the amount of surplus proceeds of such sale.

**(4) Substituted sale proceeds.**—If the court determines that a party has an interest in or lien on the amount held as a fund pursuant to an agreement described in section 6325(b)(3) (relating to substitution of proceeds of sale), the court may grant a judgment in an amount equal to all or any part of the amount of such fund.

**(c) Validity of assessment.**—For purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid.

**(d) Limitation on rights of action.**—No action may be maintained against any officer or employee of the United States (or former officer or employee) or his personal representative with respect to any acts for which an action could be maintained under this section.

**(e) Substitution of United States as party.**—If an action, which could be brought against the United States under this section, is improperly brought against any officer or employee of the United States (or former officer or employee) or his personal representative, the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action was commenced upon proper service of process on the United States.

**(f) Provision inapplicable.**—The provisions of section 7422(a) (relating to prohibition of suit prior to filing claim for refund) shall not apply to actions under this section.

**(g) Interest.**—Interest shall be allowed at an annual rate established under section 6621—

(1) in the case of a judgment pursuant to subsection (b)(2)(B), from the date the Secre-

vehicle for one other than a taxpayer who wishes to contest the propriety of a levy on property in which he claims an interest. Such relief is applicable to proceedings under § 6332. Treas. Reg. § 301.6332–1(c). While this statutory remedy under § 7426 has been available only since 1966,[35] before then appellant had available an equivalent judicially-created remedy in which he could have contested the propriety of the notice of levy. *Bullock v. Latham*, 306 F.2d 45 (2d Cir. 1962); *Seattle Ass'n of Credit Men v. United States*, 240 F.2d 906 (9th Cir. 1957); *Long v. Rasmussen*, 281 F. 236, 238 (D.C. Mont.1922). *See Glenn v. American Surety Co.*, 160 F.2d 977, 981 (6th Cir. 1947). The ultimate issue which would have been decided in any lawsuit, *viz.*, whether appellant owed Andrews anything on May 3, 1963, is the same issue that was decided in this cause.

The judgment of the district court is affirmed.

KEITH, Circuit Judge, concurring.

I concur in part I and most of part II of Judge Celebrezze's well-done opinion.

It is with reluctance that I vote to affirm. There is no reasonable excuse for the government's long delay in proceeding to collect against the defendant. Nonetheless, I must agree that established case law makes laches unavailable here to halt the government's suit.

The statute of limitations question is closer, however. I.R.C. § 6502 provides a six-year statute of limitations from the date of assessment to the levy of "any tax." Judge Celebrezze states that the government action in this case was not to collect a tax, "but rather is to enforce the personal liability for failure to surrender property after receiving a notice of levy." This is literally true. However, I would construe § 6502 as applying to third-party enforcement actions under § 6332. The plain language of § 6502 states that "[any] tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun within six years after the assessment of the tax . . . ." It should make no difference whether collection of the tax is against the taxpayer himself or against a third-party who has the taxpayer's property. In my view, the situation under § 6502 is analogous to that of a transferee taxpayer. In *United States v. Updike*, 281 U.S. 489, 494, 50 S.Ct. 367, 74 L.Ed. 984 (1930), the Supreme Court held that the limitations period applied to a transferee taxpayer in language which is fully applicable here:

> It seems plain enough, without stopping to cite authority, that the present suit, though not against the corporation but against its transferees to subject assets in their hands to the payment of the tax, is in every real sense a proceeding in court to collect a tax. The tax imposed upon the corporation is the basis of the liability, whether sought to be enforced directly against the corporation or by suit against its transferees. The aim in the one case, as in the other, is to enforce a tax liability . . . . Indeed, when used to connote payment of a tax, it puts no undue strain upon the word "taxpayer" to bring within its meaning that persons whose property, being impressed with a trust to that end, is subjected to the burden. Certainly it would be hard to convince such a person that he had not paid a tax.

In my view, the six year limitations period should be deemed to run from the date of assessment of the tax against a third party; the IRS should have no more than

---

tary receives the money wrongfully levied upon to the date of payment of such judgment; and

(2) in the case of a judgment pursuant to subsection (b)(2)(C), from the date of the sale of the property wrongfully levied upon to the date of payment of such judgment.

(h) Cross reference.—

For period of limitation, see section 6532(c).

An action under § 7426 would be predicated upon denial of IRS administrative relief which is authorized under I.R.C. § 6343. *See* Treas. Reg. § 301.6332–1(c).

35. Section 7426 was added by the Federal Tax Lien Act of 1966. P.L. 89–719, 80 Stat. 1142. It was subsequently slightly modified in a way not here relevant. P.L. 93–625, 88 Stat. 2115; P.L. 94–455, 90 Stat. 1834. Section 6343, however, was a part of the 1954 Code.

six years to either seize the property or begin legal proceedings. It is true that this suggested construction results in some anomaly in that if the IRS obtains a judgment against the principle taxpayer, then no statute of limitations bar exists on enforcement of the judgment. The IRS can go after the taxpayer's property, almost wherever it is. This, however, is an anomaly which currently exists regarding transferee liability. *See Hall v. United States*, 403 F.2d 344 (5th Cir. 1968), *cert. denied*, 394 U.S. 958, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969); *United States v. Oscar Frommel & Bro.*, 50 F.2d 73 (2d Cir.), *cert. denied*, 284 U.S. 647, 52 S.Ct. 25, 76 L.Ed. 549 (1931).

On balance, I think that construing the statute in this manner is a fair way to harmonize the Internal Revenue Code and the multiplicitous fact situations which arise: 1) property is in the hands of the taxpayer—the IRS, by the express terms of § 6502 has six years from assessment to seize the taxpayer's property or file suit; 2) property is in the hands of a transferee taxpayer—*Updike* mandates compliance with § 6502; 3) property is in the hands of a third party such as the defendant, I don't think that the result should be different; § 6502 should apply as well.

Unfortunately, as Judge Celebrezze notes, this suggested construction does not help the defendant. The reason is that unlike real or personal property, the property in this case was an intangible debt owed by a third party (Weintraub) to the taxpayer. The government served a notice of "demand" upon the defendant third party pursuant to § 6332, requesting that he turn over to the government any money owed to taxpayer Frank J. Andrews. There is no doubt that this "demand" was made within six years of the initial assessment against Andrews. The case law seems clear that the serving of this "demand" was the equivalent of a seizure of the debt and, as Judge Celebrezze says, "reduces the property or property right . . . to the constructive possession of the United States."

Were we writing on a clean slate, I would prefer requiring the government to bring suit within the six year limitations period, at least when dealing with an intangible debt. When dealing with real or personal property, the government can physically seize the property. However, as Judge Hastie said in *In re Cherry Valley Homes, Inc.*, 255 F.2d 706, 707 (3d Cir.), *cert. denied*, 358 U.S. 864, 79 S.Ct. 96, 3 L.Ed.2d 97 (1958), ". . . the possessory concept of 'seizure' is not strictly applicable to a debt . . . ." In such situations, I would hold the mere serving of a notice of "demand" insufficient to operate as a seizure and would require the government to file suit.

The case law, however, clearly establishes that the opposite is true. The serving of the notice of levy operates to reduce property or property rights to the constructive possession of the government. This was the effective holding of *Miller v. United States*, 11 Wall 268, 297, 78 U.S. 268, 297, 20 L.Ed. 135 (1870) where the Court stated that:

> In all cases where the garnishee is a debtor, or where the garnishment is of stocks, it is effected by serving notice upon the debtor, or corporation . . . The service of an attachment, though it is but a notice, binds the debt or the stock in the hands of the garnishee, from the time of the service, and henceforward it is potentially in "gremio legis."

Although § 6332 uses the term "demand" instead of the term "levy," it is clear that a "demand" upon a third party operates as a levy or seizure so far as property rights are concerned. This has the effect of reducing the property or property rights to the constructive possession of the United States. *Phelps v. United States*, 421 U.S. 330, 335–37, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). *See Am. Acceptance Corp. v. Glendora Better Builders*, 550 F.2d 1220, 1222–23 (9th Cir. 1977); *Matter of Rowand Co.*, 414 F.Supp. 1155, 1156–57 (E.D.Ark.1976) (Henley J.).

Given this authority, all that the government had to do to comply with the six year statute of limitations was to serve a timely levy (demand) upon the defendant debtor. There is no question that this was done. As

Judge Celebrezze points out, *ante* at pp. 620–621, the government could then wait as long as it wished to bring the instant proceeding, over twelve years later, to enforce the constructive seizure of the debt accomplished by the initial demand. In effect, the government was collecting what it had constructively seized twelve years earlier. Judge Merritt whimsically argues that this construction of the statute is irrational. He is perhaps correct, but that is the law.

MERRITT, Circuit Judge, dissenting.

The government's tax collection suit is time-barred and should be dismissed.

The relevant words of the applicable statute of limitations are simple:

Where the assessment of any tax . . . has been made . . . such tax may be collected . . . by a proceeding in court, but only if . . . the proceeding [is] begun . . . within 6 years after the assessment of the tax . . . . 26 U.S.C. § 6502.

The facts are also simple. Weintraub owed a debt to Andrews. Andrews owed money to the IRS. The IRS assessed Andrews. Andrews did not pay the assessment. IRS sought to collect the tax from Weintraub by a process of garnishment or attachment of third party indebtedness allowed under § 6332 of the tax code. Upon receiving the garnishment, Weintraub reported to IRS that he owed no debt to Andrews. Nothing happened for thirteen years. Then, thirteen years later, IRS decided to sue Weintraub to collect on its attachment of Weintraub's debt to Andrews.

The conclusion should be obvious. A tax garnishment attached Weintraub's debt to Andrews thirteen years before suit was filed. No "proceeding" to collect was instituted for thirteen years. Nothing in the statute of limitations excludes collection of garnishments or purports to limit its application only to a "proceeding" to collect the tax directly from the taxpayer who owes the money. The language of the statute says simply the tax may be collected by a proceeding in court *"within 6 years after the assessment."* (Emphasis added.)

The consequences of a contrary conclusion are irrational. Under the Court's interpretation, the estate of a garnishee in the hands of his great, great-grandchildren must still pay the IRS 100 years after the six-year federal statute of limitations has run on the original tax bill, 100 years after the garnishment was answered and 100 years after the applicable state statute of limitations has run on the original indebtedness owed by the garnishee to the original creditor. The estate of the original creditor, the taxpayer who owed the money to the government in the first place, is free and clear because the six-year statute ran against him long ago, but the poor garnishee—who (let us assume) religiously paid his own taxes all his life—remains forever liable for the taxes of another.

The Court reaches this anomalous result by holding that the statute, § 6502, only concerns "actions against taxpayers" and "not actions . . . against third parties in possession of a taxpayer's property or property rights," although it acknowledges that there is "no case expressly holding that § 6502 is not applicable." No attempt is made to discuss the irrational consequences of this conclusion. The Court does not even attempt to parse or analyze the language of the statute in order to justify the conclusion. It simply quotes "the rule *nullum tempus occurrit regi*" ("time does not run against the king") and combines it with a wonderful legal fiction, the doctrine of "constructive possession" of personal property. The Court says:

Since the notice of levy served on appellant reduced the debt owed to Andrews to the constructive possession of the United States, it would make no sense to impose a time limit upon bringing an action . . . to reduce the property right to the actual possession of the United States.

Not even the common law during its darkest days of legal formalism and rigid adherence to fiction and abstraction took the doctrine of "constructive possession" this far. In the famous case of *Pierson v.*

*Post*, 3 Caines 175, 2 Am.Dec. 264 (N.Y. 1805), the plaintiff with his hounds was in hot pursuit of a fox, *ferae naturae*, when the defendant intervened and in the sight of plaintiff shot and carried the fox away. The question was put:

> [W]ho would keep a pack of hounds; or what gentelman, at the sound of the horn and at peep of day would mount his steed, and for hours together, 'sub jove frigido' . . . pursue the windings of this wily quadruped, if, just as night came on, and his strategems and strength were nearly exhausted, a saucy intruder, who had not shared in the honors or labours of the chase, were permitted to come in at the death, and bear away in triumph the object of pursuit? (Livingston, J., dissenting)

After so sympathetically describing the plaintiff's plight and poring over Justinian, Fleta, Bracton, Puffendorf, Locke, Barbeyrac or Blackstone for enlightenment, the court holds that the doctrine of "constructive possession" does not apply because the "case . . . is one of mere pursuit, and presents no circumstances or acts which can bring it within the definition of occupancy [or control announced] by Puffendorf." The court concludes that "[h]owever uncourteous or unkind the conduct of *Pierson* towards *Post*, in this instance, may have been," a contrary holding "would prove a fertile source of quarrels and litigation."

In the instant case, the Court's conclusion means that "quarrels and litigation" over tax claims with an omnipresent government will never end, even if the lifetime of our children's children unto the seventh generation. If the fox in *Pierson v. Post* was not in the constructive possession of the pursuer, I do not see so many years later why we should struggle with Shakespearean imagination to locate the money Mr. Weintraub owed to Mr. Andrews in the "constructive possession" of the government. Mr. Weintraub's fox was invisible, an incorporeal hereditament. If it ever existed, it was killed and skinned long ago. The trial has grown cold. The participants in the hunt who have not already died have grown old and forgotten the facts. After all these

years, only the government's appetite for the chase remains. But in my judgment, they should sound the horn in other fields and send the hounds to follow trails which are not so stale, for *lex dilationes semper exhorret* ("the law abhors delay"), 2 Coke Inst. 240, is a better rule than *nullum tempus occurrit regi*.